1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GREGORY C. BONTEMPS,                      No.  2:12-cv-2185 TLN AC P

12              Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   SALINAS et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  This action proceeds on the original complaint, ECF No. 1, against defendants

19   Neves, Abbott, and Shuford for violations of plaintiff's constitutional rights under the First,

20   Fourth, and Eighth Amendments.  Presently before the court is defendants' motion for summary

21   judgment.  ECF No. 51.

22                          PROCEDURAL HISTORY

23        Plaintiff filed his complaint on July 31, 2012.[1]  ECF No. 1.  By order filed November 26,

24   2012, the court determined that plaintiff's complaint stated colorable First, Fourth, and Eighth

25   /////

26

27   _____
     [1] Under the prison mailbox rule, the date plaintiff signed the complaint is be considered his filing
     date absent evidence to the contrary.  See Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir.
28   2003).

                                         1

1    amendment claims against defendants Neves, Abbott, and Shuford.  See ECF No. 10.  A

2    discovery and scheduling order issued on June 9, 2014.  ECF No. 46.

3         On November 5, 2014, defendants filed a motion for summary judgment on the grounds

4    that plaintiff failed to exhaust his administrative remedies prior to filing suit.  ECF No. 51.  On

5    the same date, defendants also filed a motion for a protective order staying discovery pending

6    resolution of defendants' summary judgment motion.  ECF No. 52.  Plaintiff did not respond to

7    either motion.  On January 13, 2015, defendants filed a declaration in lieu of a formal reply

8    regarding plaintiff's failure to oppose defendants' motion for summary judgment.  ECF No. 55.

9         On January 14, 2015,[2] the court issued an order temporarily staying discovery pending

10   resolution of defendants' summary judgment motion and directing plaintiff to show cause why his

11   case should not be dismissed for lack of prosecution.  ECF No. 56.  In response, plaintiff filed a

12   document opposing defendants' summary judgment motion[3] and purporting to oppose the

13   temporary stay on discovery.  ECF No. 57.  On February 23, 2015, plaintiff filed a motion for a

14   thirty-day extension of time to amend his opposition to defendant's summary judgment motion.[4]

15   ECF No. 58.

16        On March 10, 2015, defendants filed a motion to vacate or modify the discovery and

17   scheduling order pending resolution of defendants' motion for summary judgment and the court's

18   January 14, 2015 order to show cause.  ECF No. 59.

19        By order dated March 18, 2015, the court granted defendants' motion to vacate the dates

20   in the discovery and scheduling order, discharged the January 14, 2015 order to show cause, and

21   granted plaintiff's request for an extension of time to file an amended opposition to defendants'

22   motion for summary judgment.  ECF No. 60 at 2.  On March 30, 2015, plaintiff filed an amended

23   /////

24   _____

25   [2] The court notes that although the signature date on this order reads "January 13, 2014," see ECF
     No. 56 at 2, it was actually signed on January 13, 2015.

26   [3] As will become apparent, plaintiff's efforts to oppose defendants' summary judgment motion
     span three different filings: ECF No. 57, ECF No. 58, and ECF No. 61.

27   [4] In his motion, plaintiff explained that he needed to amend his opposition because the court's
     January 14, 2015 order, ECF No. 56, was incorrectly dated "2014" rather than "2015."  ECF No.

28   58 at 2-3.

1    opposition to defendants' summary judgment motion.  ECF No. 61.  Defendants filed their reply

2    on April 3, 2015.  ECF No. 62.

3                                    PLAINTIFF'S COMPLAINT

4           Plaintiff's complaint alleges that on June 2, 2012, defendants Neves, Abbott, and Shuford

5    stopped plaintiff outside the law library at High Desert State Prison and foribly searched him.

6    ECF No. 1 at 4-5.  Plaintiff alleges that defendants made him remove his nylon back brace and

7    that defendants stripped, pushed, shoved, and punched plaintiff while searching him.  Plaintiff

8    further alleges that defendants lifted plaintiff off the ground and slammed him down on the

9    pavement.  Id.

10          Plaintiff alleges that defendant Shuford searched his legal work.  ECF No. 1 at 4.  After

11   finding a complaint plaintiff had written about defendant Neves, defendant Shuford allegedly told

12   plaintiff that he was tired of plaintiff writing up his staff, and that they were going to teach him a

13   lesson.  Id. at 4-5.  Plaintiff alleges that he had previously filed a grievance regarding defendant

14   Abbott's use of excessive force.  Id.

15                         DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

16   I.     Arguments of the Parties

17          A. Defendants' Argument

18          Defendants Neves, Abbott, and Shuford move for summary judgment solely on the

19   ground that plaintiff failed to properly exhaust his administrative remedies within the prison

20   system before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

21   Defendants argue that plaintiff failed to properly exhaust administrative remedies because he filed

22   suit prematurely and did not pursue his grievance through the third level of review prior to filing

23   his complaint on August 3, 2012.[5]  ECF No. 51-3 at 6-7.  According to defendants, plaintiff filed

24   _____

25   [5] Defendants refer to the filing date as the date the complaint was docketed by the court, but under
     the prison mailbox rule the date plaintiff signed the complaint will be considered his filing date
26   absent evidence to the contrary.  See Jenkins v. Johnson, 330 F.3d at 1149 n. 2 (date petition is
     signed may be considered earliest possible date an inmate could submit his petition to prison
27   authorities for filing under the mailbox rule).  Here, plaintiff signed the complaint on July 31,
     2012.  See ECF No. 1 at 6.  However, the difference between the date asserted by defendants and
28   that adopted by the court does not affect the exhaustion analysis.

                                                    3

1   suit before receiving even a first level response to his grievance and never submitted his

2   grievance for second or third level review.  Because plaintiff did not complete the exhaustion

3   process prior to filing suit on August 3, 2012, defendants argue they are entitled to summary

4   judgment.

5              B.  Plaintiff's Opposition

6        Much of plaintiff's amended opposition to defendants' summary judgment motion, ECF

7   No. 61, is dedicated to explaining why plaintiff's opposition papers consist of more than one

8   filing.[6]  Plaintiff contends the court should consider documents ECF No. 57, ECF No. 58, and

9   ECF No. 61 collectively as his opposition to defendants' motion for summary judgment.

10       At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

11   Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed

12   must support the assertion by . . . citing to particular parts of materials in the record . . . ."

13   Plaintiff has also failed to file a separate statement of disputed facts, as required by Local Rule

14   260(b).

15       It is well-established that the pleadings of pro se litigants are held to "less stringent

16   standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

17   (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

18   govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on another

19   ground by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).  However,

20   unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

21   subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited

22   access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

23

24   _____

[6] Plaintiff explains that the amended opposition was not intended to replace the opposition he
filed on February 23, 2015, ECF No. 57, but was meant to be added to it.  ECF No. 61 at 1.
25   Plaintiff also asserts that he opposed defendants' summary judgment motion when he filed his
request for an extension of time, ECF No. 58, and asks that the court review the documents
26   attached to that request.  In addition, plaintiff refers the court to the documents he filed in
response to the court's January 14, 2015 order to show cause, which include a printout of his
27   appeals activity at the third level of review and a letter plaintiff sent inquiring about a third level
response to his appeal, see ECF No. 57 at 3-8.
28

1   1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

2   "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

3   The court is mindful of the Ninth Circuit's more overarching caution in this context, as

4   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

5   pro se inmates and . . . avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

6   F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its

7   entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However,

8   only those assertions in the opposition which have evidentiary support will be considered.

9   Plaintiff opposes summary judgment in defendants' favor, but does not dispute

10  defendants' evidence regarding exhaustion.  Plaintiff asserts that "exhaustion of administrative

11  remedies was beyond his control," and that any failure to exhaust administrative remedies was

12  through no fault of his own, but was instead due to CDCR's "neglectful and delayed response" to

13  his appeals.  ECF No. 61 at 4-5.  In support of his argument, plaintiff refers the court to a printout

14  of his appeals activity at the third level of review, ECF No. 57 at 3-8.  Plaintiff states that he

15  "asked CDCR to produce [his] appeals," but "CDCR [stated] they have no copy of the third level

16  appeal decision."  Id. at 1.

17  C.  Defendant's Reply

18  In reply, defendants argue that plaintiff failed to provide any admissible evidence to

19  establish a genuine dispute of material fact regarding the issue of exhaustion.  ECF No. 62 at 1.

20  Specifically, defendants assert that plaintiff provided no evidence that he submitted his grievance

21  to the second or third level of review prior to filing suit and that plaintiff's evidence shows, at

22  most, that he requested a printout of his third level grievances and that the Office of Appeals did

23  not have a copy of his third level grievance regarding the June 2, 2012 incident.  Id. at 3.

24  As to plaintiff's argument that CDCR staff delayed in resolving his grievance, defendants

25  argue that any delay in responding to plaintiff's first level grievance was minor and should not

26  excuse plaintiff's premature filing of his lawsuit.  Id. at 5.  Specifically, defendants emphasize

27  that a response to plaintiff's grievance was not due until August 7, 2012 and that plaintiff

28  /////

5

1  prematurely filed his lawsuit on August 3, 2012 before he had even received a first level response

2  to his appeal.  Id. at 3.

3      II.     Legal Standards for Exhaustion

4          A.  Prison Litigation Reform Act

5        Section 1997(e) (a) of Title 42 of the United States Code provides that "[n]o action shall

6  be brought with respect to prison conditions under section 1983 of this title, ... until such

7  administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a) (also known as

8  the Prison Litigation Reform Act ("PLRA")).  The PLRA requires that administrative remedies be

9  exhausted prior to filing suit.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

10        Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones

11  v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

12  available administrative remedy, and that the prisoner did not exhaust that available remedy."

13  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  "[T]here can be no 'absence of exhaustion'

14  unless some relief remains available."  Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005).

15  Therefore, the defendant must produce evidence showing that a remedy is available "as a

16  practical matter," that is, it must be "capable of use; at hand."  Albino, 747 F.3d at 1171.

17        A prisoner must exhaust his administrative remedies for constitutional claims prior to

18  asserting them in a civil rights complaint.  42 U.S.C. § 1997e(a); McKinney v. Carey, 311 F.3d at

19  1199.  If a prisoner exhausts a claim after bringing it before the court, his subsequent exhaustion

20  cannot excuse his earlier failure to exhaust.  Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir.

21  2006) ("[A prisoner] may initiate litigation in federal court only after the administrative process

22  ends and leaves his grievances unredressed.  It would be inconsistent with the objectives of the

23  statute to let him submit his complaint any earlier than that."); McKinney, 311 F.3d at 1199 (a

24  prisoner does not comply with exhaustion requirement by exhausting available remedies during

25  the course of litigation).

26        When the district court concludes that the prisoner has not exhausted administrative

27  remedies on a claim, the proper remedy is dismissal of the claim without prejudice.  Id. at 1200.

28  /////

1          B.  California Regulations Governing "Exhaustion" of Administrative Remedies

2          Exhaustion requires that the prisoner complete the administrative review process in

3    accordance with all applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81 (2006).  This

4    review process is set forth in California regulations.  Those regulations allow a prisoner to

5    "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her

6    health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust, an inmate

7    must proceed through the following levels of review: (1) first level written appeal on a CDCR

8    602 inmate appeal form ("appeal" or "602") (which level may be bypassed by the appeals

9    coordinator in certain instances not implicated here), (2) second level appeal for review by "the

10   hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional

11   Parole Administrator, or the equivalent" and (3) third level appeal to the Secretary of the

12   California Department of Corrections and Rehabilitation for review by the Office of the Chief of

13   Inmate Appeals.  15 Cal. Code Regs. §§ 3084.2, 3084.7.  The third level of review satisfies the

14   exhaustion requirement.  Id.

15         Each prison is required to have an "appeals coordinator" whose job is to "screen all

16   appeals prior to acceptance and assignment for review."  Id. § 3084.5(b).  Under 15 Cal. Code

17   Regs. § 3084.5(b)(4), an appeal describing illegal, unethical, or otherwise improper staff

18   behaviors may be processed as a routine appeal, a staff complaint appeal inquiry, or referred to

19   Internal Affairs for an investigation.  Staff complaints are processed in the same manner as

20   inmate appeals.  Id. § 3084.9(f).

21         When an appeal is submitted for first level review, the appeal must be responded to and

22   returned to the inmate within thirty working days from date of receipt by the appeals coordinator.

23   Id. § 3084.8(c).  An exception to this time limit is authorized in the event of the "[u]navailability

24   of the inmate or parolee, or staff, or witnesses."  Id. § 3084.8(d).  If an exceptional delay

25   prevents completion of the review within this time limit, the inmate shall be provided with an

26   explanation of the reasons for the delay and the estimated completion date.  Id. § 3084.(8)(e).

27   The notice of delay must be provided to the inmate within the same time limit, i.e. within thirty

28   working days from date of receipt by the appeals coordinator.  See id. § 3084.8(c), (e).

1   The appeals coordinator may refuse to accept an appeal, and she does so either by

2   "rejecting" or "canceling" it.  Cal. Code Regs. tit. 15, § 3084.6(a).  According to the regulations,

3   "a cancellation or rejection decision does not exhaust administrative remedies."  Id. § 3084.1(b).

4   If the appeals coordinator allows an appeal to go forward, the inmate must pursue it through the

5   third level of review before it is deemed "exhausted."  Id. § 3084.1(b) ("all appeals are subject to

6   a third level of review, as described in section 3084.7, before administrative remedies are deemed

7   exhausted").

8   III.   Legal Standards for Summary Judgment

9   Summary judgment is appropriate when the moving party "shows that there is no genuine

10  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

11  Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

12  proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

13  v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

14  (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

15  this by "citing to particular parts of materials in the record, including depositions, documents,

16  electronically stored information, affidavits or declarations, stipulations (including those made for

17  purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

18  that such materials "do not establish the absence or presence of a genuine dispute, or that the

19  adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

20  P. 56(c)(1)(A), (B).

21  When the non-moving party bears the burden of proof at trial, "the moving party need

22  only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

23  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

24  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

25  against a party who fails to make a showing sufficient to establish the existence of an element

26  essential to that party's case, and on which that party will bear the burden of proof at trial.  See

27  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

28  nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

1   circumstance, summary judgment should be granted, "so long as whatever is before the district

2   court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

3        If the moving party meets its initial responsibility, the burden then shifts to the opposing

4   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

5   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

6   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

7   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

8   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

9   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] Plaintiff's verified complaint

10  may be considered as an affidavit in opposition to summary judgment if it is based on personal

11  knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122,

12  1132 n.14 (9th Cir. 2000) (en banc).[7]

13       The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

14  might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

15  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

16  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

17  reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

18  Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

19       In the endeavor to establish the existence of a factual dispute, the opposing party need not

20  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

21  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

22  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

23  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

24  Matsushita, 475 U .S. at 587 (citations omitted).

25       "In evaluating the evidence to determine whether there is a genuine issue of fact," the

26  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

27  ———————————————

28  [7]  Plaintiff filed a verified complaint in this case.  See ECF No. 1 at 3.

1  party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per

2  curiam).  It is the opposing party's obligation to produce a factual predicate from which the

3  inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45

4  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine

5  issue, the opposing party "must do more than simply show that there is some metaphysical doubt

6  as to the material facts.…  Where the record taken as a whole could not lead a rational trier of fact

7  to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587

8  (citation omitted).

9        In applying these rules, district courts must "construe liberally motion papers and

10  pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

11  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

12  support an assertion of fact or fails to properly address another party's assertion of fact, as

13  required by Rule 56(c), the court may … consider the fact undisputed for purposes of the

14  motion…."  Fed. R. Civ. P. 56(e)(2).

15    IV.    Undisputed Material Facts Pertaining to Exhaustion

16

17  •  Plaintiff is a state prisoner in the custody of the California Department of Corrections and
       Rehabilitation.  Defendant's Statement of Undisputed Facts in Support of Motion for
18     Summary Judgment ("Facts") (ECF No. 51-2) ¶ 1.[8]

19  •  At all times relevant to this lawsuit, plaintiff was incarcerated at High Desert State Prison
       (HDSP) in Susanville, CA.  Facts ¶ 2.
20

21  •  At all times relevant to this lawsuit, defendants Correctional Officer Neves, Correctional
       Officer Abbott, and Correctional Sergeant Shuford were employed by CDCR at HDSP.
22     Facts ¶ 3.

23  •  Plaintiff's complaint concerns an incident that took place on June 2, 2012, when
       defendants allegedly strip-searched, punched, pushed, shoved, and kicked plaintiff.  See
24     ECF No. 1 at 4; ECF No. 51-3 at 2.  Plaintiff's complaint was filed by the clerk of the
       court on August 3, 2012.  See ECF No. 1.
25

26

27  ────────────────
    [8] Where, as here, defendant's Undisputed Facts are supported by the submitted evidence, and not
    contested by plaintiff, the court cites only to the relevant paragraph of defendant's Undisputed
28  Facts.

                                        10

1
2

- Between June 2, 2012 and August 3, 2012, plaintiff submitted eight non-healthcare related grievances for first level review.  Facts ¶ 10.

3

- Four of the grievances filed between June 2, 2012 and August 3, 2012 were screened out on the grounds that they did not comply with regulations.  Facts ¶¶ 10-11.

4
5

- Four of the grievances filed between June 2, 2012 and August 3, 2012 were accepted.[9] Facts ¶¶ 10-11.

6
7

- One of the accepted grievances, HDSP-12-02003, addressed plaintiff's allegations in this lawsuit.  Facts ¶ 12; ECF No. 51-6 Exh. B at 32-36.

8
9
10

- Grievance log number HDSP-12-02003 was received by the HDSP Inmate Appeals office on June 26, 2012.  Facts ¶ 13.  The exhibits attached to defendants' motion for summary judgment indicate that plaintiff signed this grievance on June 9, 2012.  See ECF No. 51-6 Exh. B at 32.

11
12

- On June 27, 2012, Acting Chief Deputy Warden F. Foulk decided to process HDSP-12-02003 as a staff complaint.  Declaration of D. Clark ("Clark Decl.") (ECF No. 51-5) ¶ 9; ECF No. 51-6 Exh. B at 32.

13
14

- On June 29, 2012, HDSP-12-02003 was assigned for a first level staff complaint review with a due date of August 9, 2012.[10]  Clark Declr. ¶ 10; ECF No. 51-6 Exh. B at 32.

15
16

- On July 24, 2012, Acting Sergeant Henley met with plaintiff and completed an Effective Communication form to determine whether plaintiff needed assistance in understanding the interview and/or the written appeal response.  Facts ¶ 14.

17
18

- On August 3, 2012, plaintiff's civil rights complaint was filed by the clerk of the court. See ECF No. 1 at 1.  The signature date on the complaint is July 31, 2012.  See id. at 3.

19

- During the week of August 6, 2012, defendant Correctional Officer Abbott was on vacation.  Clark Declr. ¶ 12.

20
21
22

- By letter dated August 13, 2012, plaintiff was notified that due to the "[u]navailability of the appellant, or staff or inmate witness," the due date on appeal HDSP-12-02003 had been extended.  The letter indicated the new estimated completion date was August 17, 2012.  See ECF No. 51-6 Exh. B at 37.

23
24

- On August 17, 2012, Acting Sergeant Henley met with plaintiff a second time and interviewed plaintiff regarding his grievance.  Clark Decl. ¶ 14.

25

/////

26
27
28

---

[9] Copies of these grievances are attached as exhibits to defendants' motion.  See ECF No. 51-6 Exh. A-D.

[10] The court notes that in their reply brief, ECF No. 62, defendants assert that the due date was actually August 7, 2012.  See ECF No. 62 at 3.

- On August 20, 2012, Sergeant Turner interviewed plaintiff regarding his grievance. Clark Decl. ¶ 15.

- On August 24, 2012, the staff response for plaintiff's grievance HDSP-12-02003 was completed. Clark Decl. ¶ 16. Plaintiff's grievance was partially granted at the first level of review inasmuch as an inquiry into plaintiff's allegation was conducted. Facts ¶ 16; ECF No. 51-6 Exh. B at 30-31.

- The staff response indicated that the inquiry was complete and that staff did not violate CDCR policy. ECF No. 51-6 Exh. B at 31.

- The staff complaint response further advised plaintiff: "If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted." Facts ¶ 17.

- The staff complaint response was mailed to plaintiff on August 31, 2012. Facts ¶ 16.

- According to the records of the HDSP inmate appeals office, plaintiff did not resubmit grievance HDSP-12-02003 for further review. Facts ¶ 18, Clark Decl. ¶¶ 2-5, 18.

- According to the records of the CDCR's Office of Appeals, between June 2, 2012 and August 3, 2012, no appeals by plaintiff were accepted and adjudicated at the Third Level of Review. Declaration of R. Briggs (ECF No. 51-4) ¶ 10.

V.    Plaintiff's Evidence:

In opposition to defendants' motion for summary judgment, plaintiff provides the following evidence:[11]

- A letter to the Chief of Inmate Appeals, which reads: "#HDSP-012-02003[.] The Appeals Coordinator new completion date was 8-17-12. After I received it a third level review was never sent back to me why? Is there one? I need a final Third Level Response!" ECF No. 57 at 9. The letter is not signed or dated. The stamp on the letter indicates it was received by the Inmate Appeals Branch on December 9, 2014. See id.

- A letter from the Office of Appeals dated December 10, 2014, stating that the attached pages list a summary of plaintiff's recent appeal history. ECF No. 57 at 3. A five-page printout of plaintiff's appeal history is attached. Id. at 4-8. It does not include any reference to HDSP-12-02003. See id.

---

[11] Plaintiff also submits additional documents which do not appear related to the issue of exhaustion. These documents include a copy of an administrative segregation placement notice dated December 12, 2014, ECF No. 57 at 11, and two court orders regarding plaintiff's in forma pauperis status, ECF No. 61 at 9-30.

12

- An Inmate/Parolee Request form dated January 11, 2015.  ECF No. 57 at 10.  "Staff complaints not being processed in a timely manner" is handwritten across the top of the document.  The body of the complaint refers to grievances regarding excessive use of force filed in 2014.  See id.

VI.    Discussion

Plaintiff's claim arises from a single incident that occurred at High Desert State Prison on June 2, 2012.  Plaintiff's complaint was filed on July 31, 2012.  Accordingly, plaintiff was required to complete the prison grievance process between June 2, 2012 and July 31, 2012 in order to properly exhaust his administrative remedies prior to filing suit.  See McKinney, 311 F.3d 1198 (the PLRA requires that administrative remedies be exhausted prior to filing suit).  In other words, plaintiff needed to pursue his grievance through the third level of review prior to July 31, 2012 in order to properly exhaust his claims.  See 15 Cal. Code Regs. § 3084.1(b) ("all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted").

Defendants have produced evidence that between June 2, 2012 and July 31, 2012, plaintiff filed only one grievance concerning the June 2, 2012 incident.[12]  This grievance, HDSP-12-02003, was signed by plaintiff on June 9, 2012 and received by the HDSP appeals office on June 26, 2012.[13]  According to the regulations in place at the time, HDSP staff had 30 working days from the date the appeal was received by the appeals coordinator to respond to plaintiff's grievance.  See 15 Cal. Code Regs. § 3084.8(c).  Construed in the light most favorable to plaintiff, a first level response to plaintiff's grievance was due at the earliest on August 7, 2012, i.e. within thirty working days from June 26, 2012.  Plaintiff filed his complaint on July 31, 2012, before a first level response to his grievance was due.

/////

---

[12] Defendants submitted copies of five grievances filed by plaintiff between June 2, 2012 and August 3, 2012.  See ECF No. 51-6 at 1-88.  The court has reviewed these documents and notes that grievance log HDSP-D-12-02304 makes references to the June 2, 2012 incident.  See ECF No. 51-6 Exh. E at 86-87.  However, the reference is made in the context of a request for a replacement brace or air cast, which is not at issue in this lawsuit.
[13] Defendants do not explain why plaintiff's grievance was not "received" until June 26, 2012.

1    Defendants' evidence establishes that plaintiff had not completed the first level of review

2    at the time he filed his complaint on July 31, 2012, much less the second or third levels of review.

3    Thus, at the time plaintiff filed this lawsuit, his claims were unexhausted because they had not yet

4    been pursued to the third level of review.  See 15 Cal. Code Regs. § 3084.1(b).

5    Since defendants have met their initial burden of establishing non-exhaustion, the burden

6    now shifts to plaintiff to come forward with evidence showing that a genuine dispute of material

7    fact regarding exhaustion exists or that something in his particular case made the existing

8    administrative remedies unavailable to him.  See Albino, 747 F.3d at 1172.

9    It is unclear whether plaintiff means to assert that he exhausted administrative remedies,

10   or if his sole argument is that he should be excused from the exhaustion requirement.  To the

11   extent plaintiff asserts that he exhausted administrative remedies, plaintiff's argument is

12   unsupported by the record.  The court has reviewed the record in its entirety and finds no

13   evidence that, prior to July 31, 2012, plaintiff pursued grievance HDSP-12-02003 to the third

14   level of review.  Moreover, plaintiff does not assert that he did so.

15   The only evidence that suggests plaintiff may have filed a third level appeal is the

16   December 9, 2014 letter plaintiff wrote to the Chief of Inmate Appeals.  In the letter, plaintiff

17   appears to acknowledge that he received a first level response to grievance HDSP-12-02003, but

18   states, "after I received it a third level review was never sent back to me."  See ECF No. 57 at 9.

19   Construed in plaintiff's favor, this evidence gives rise to the inference that plaintiff believed that a

20   third level appeal was pending.  However, such a belief does not support the further inference that

21   a third level appeal had been filed in compliance with the applicable regulations.  Moreover, even

22   assuming that plaintiff filed a third level appeal, there is no indication that he did so prior to filing

23   his complaint on July 31, 2012, as required in order to properly exhaust his claims.  See

24   McKinney, 311 F.3d 1198.  Considering that plaintiff's appeal was still pending at the first level

25   of review as of July 31, 2012, there is no basis for the court to find that plaintiff exhausted his

26   administrative remedies by pursuing grievance HDSP-12-02003 to the third level of review prior

27   to filing his complaint.  See 15 Cal. Code Regs. § 3084.1(b).

28   /////

14

1        A court may excuse a prisoner from complying with the exhaustion requirement when

2 prison officials render administrative remedies effectively unavailable, even if prison officials did

3 not act in bad faith.  See Sapp, 623 F.3d at 822; Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir.

4 2010).  Here, plaintiff appears to assert that he should be excused from the exhaustion

5 requirement because exhaustion of administrative remedies was "beyond his control."  ECF

6 No. 1 at 4-5.  Plaintiff asserts that his failure to exhaust was through no fault of his own, but was

7 due to CDCR staff's delayed response to his appeal.  Id.  Because plaintiff does not elaborate on

8 his allegations, it is unclear what delays plaintiff is referring to.  Specifically, it is unclear whether

9 plaintiff asserts that HDSP staff delayed in responding to his grievance at the first level of review,

10 or if he intends to assert that staff delayed in responding to his third level appeal (assuming that

11 he filed one).

12        As discussed above, a first level response to plaintiff's grievance was due at the earliest on

13 August 7, 2012.  By the time the first level response was due, plaintiff had already filed his

14 complaint.  While it does appear that staff delayed in notifying plaintiff that his appeal would not

15 be resolved until after August 7, 2012,[14] this delay has no effect on the exhaustion analysis

16 because it transpired after plaintiff had already filed suit.  See McKinney, 311 F.3d 1198.

17        To the extent plaintiff alleges delays occurred at the third level of review, plaintiff

18 provides no evidence that these unidentified delays occurred before plaintiff filed this lawsuit on

19 July 31, 2012.  Any delays that occurred after July 31, 2012 are immaterial to the exhaustion

20 analysis because exhaustion is required prior to filing suit.  See McKinney, 311 F.3d 1198; see

21 also Vaden, 449 F.3d at 1051.  Accordingly, plaintiff has not met his burden of putting forth

22 evidence that administrative remedies were unavailable to him.  See Albino, 747 F.3d at 1172.

23

24 [14] According to the applicable regulations, plaintiff should have been notified within thirty
working days of June 26, 2012, if he would not be receiving a timely first level response to his

25 grievance.  See 15 Cal. Code Regs. §§ 3084.8(c)-(e). This notice of delay was due to plaintiff on
August 7, 2012.  See id.  It appears that plaintiff did not receive the notice until at least August

26 13, 2012, if not later.  See ECF No. 51-6 Exh. B at 37.  In any event, the first level review of
grievance HDSP-12-02003 was completed on August 24, 2012 and the response was mailed to

27 plaintiff on August 31, 2012.  Facts ¶ 16; ECF No. 51-6 Exh. B at 30-31.

28

1    For the above reasons, the undersigned finds that plaintiff did not comply with the pre-suit

2  exhaustion requirement.  It is therefore recommended that defendants' motion for summary

3  judgment be granted and plaintiff's complaint be dismissed without prejudice.

4    In accordance with the above, IT IS HEREBY RECOMMENDED that:

5    1.  Defendants' motion for summary judgment (ECF No. 51) be granted; and

6    2.  Plaintiff's complaint (ECF No. 1) be dismissed without prejudice.

7    These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9  after being served with these findings and recommendations, plaintiff may file written objections

10  with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

11  and Recommendations."  Plaintiff is advised that failure to file objections within the specified

12  time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153

13  (9th Cir. 1991).

14  DATED:  July 30, 2015.

15    _____/S/ Allison Claire_____
16    ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

16